The next case for argument and our last case today is United States v. Aragon, DACA 23-2135. May it please the Court. Justine Fox-Young for Appellant, Arthur Aragon. Good morning, Your Honors. On April 11, 2022, Arthur Aragon used a Molotov cocktail in connection with a misdemeanor, a misdemeanor under New Mexico law. He pled guilty to possession of a dangerous weapon without registration, without a plea agreement. There was no factual basis. Probation recommended a four-level enhancement under 2K2.1b6b. At sentencing, the government did not put on evidence to show by a preponderance that Mr. Aragon had intended to commit a felony, that he had committed a second felony under the guideline. I'd like to go right to the Eaton case because I think that is guidance for the Court here. Now in Eaton, this Court firmly held that the mere fact that a destructive device has the potential to facilitate a felony does not exempt the application of the guideline. At that time, it was numbered differently. But critically in this case, the Court must recognize, nor does the mere fact that a destructive device has the potential to facilitate a felony require that the guideline be imposed, that the enhancement under the guideline be imposed. That is what happened in the District Court in this case. Now probation included a recommendation that the Court find that Mr. Aragon had attempted negligent arson. The Court found that that wasn't the case. He had committed willful conduct. And under New Mexico law, as we briefed, there wasn't a basis for negligent arson. The Court found he did not commit another felony, and so it went to the catch-all in the guideline. The catch-all being use or possession of a dangerous weapon with the potential to cause another felony offense. And the Court essentially found that a Molotov cocktail has special features that mean that any time somebody launches one, throws one, places one, they can cause a fire. And so that takes this case back to what I pointed to in Eaton. The District Court essentially found that the guideline must be imposed. So in sentencing, the government did put on some evidence, some witness testimony. Clearly, the Court could have heard evidence, hearsay statements from the defendant, and had those contribute to the sentence to show that he did intend a felony. But the Court didn't hear that evidence. The hearsay statements that the Court heard were statements like, from the neighbor, Mr. Aragon just told us he was messing with us. He said we were good guys, and he wasn't trying to do anything. The Court heard evidence about Mr. Aragon's prior course of conduct, that this had been an ongoing issue with the neighbors, and that he had placed 10 to 12 Molotov cocktails in their yard over a period of six months, none of which had caused a fire. And so that evidence that the Court had certainly couldn't contribute to a finding that Mr. Aragon intended felony-level arson, which under New Mexico law is $500 in damage or more. The Court saw photographs from the scene, and this Court has those as Exhibits 1 to 4. They show some charring on a low pony wall that is separated from the residence. The Court didn't even hear evidence to identify which of those marks came from this device. The Court heard testimony from an ATF agent, the government's purported expert, who said, I've responded to hundreds upon hundreds of scenes where Molotov cocktails have been used. And his testimony was that maybe eight of them actually started the conflagration. That is actually very difficult to effectively deploy a Molotov cocktail and start a fire. And so, in the main, that is essentially the evidence that the Court heard, and based upon that information, found, ruled, that, and this is a direct quote from the District Court, there is no reason to throw a Molotov cocktail other than to start a fire. The government argues in briefing that that ruling, implicit in that ruling, is a finding that Arthur Aragon intended felony arson, but there was no finding. There was no finding anywhere throughout the sentencing hearing. At the end of the sentencing hearing, when the Court expounded on the 3553 factors and completed the sentence, the Court actually contradicted itself, and this is at Appendix 176, and said that the weapon was utilized in an attempted arson. That wasn't his finding after the evidentiary hearing on the enhancement. That wasn't the Court's finding. And so, Your Honors, and I believe this is a Genova review, and we've briefed this, it's a mixed question of law and fact, but the wrong standard was applied here. I don't know how the District Court can take a case where you're looking at the catch-all under this guideline and apply a higher standard than you would to a case where there is actually a second felony committed, and there are a number of those cases cited in the briefing. So if he had a better arm, if he could throw it a little bit further, would that make a difference? Well, I think the Court has to consider that. I mean, if he had thrown it in a park a mile from a structure, would that satisfy the guideline and require the imposition of the enhancement? No, but suppose it was your house, and it got into your backyard, would that... Certainly, if there had been some evidence of that, Judge, if there had been a hearsay statement, not like I was aiming for the window. There was testimony that he had previously broken the windows and done other damage. I was aiming for the window. I wanted to burn the house down. Anything that the Court could point to. And that is what this Court has required in other cases. If you look at Fennell, which we briefed, it's not enough to have... In that case, there was unsworn testimony put on by an officer about a second assault that was committed. This Court said that's not enough. Here, there wasn't even unsworn testimony. There really was nothing to support the imposition of the enhancement. And I think Eaton is clearly distinguishable. Now, in Eaton, the facts are very instructive. The defendant in that case was dealing with an undercover agent. He's in a motorcycle gang. He is able to acquire bombs. There was extensive discussion, which the Court heard, about the use of those bombs, the intent to blow up a car, the intent to commit homicide. The defendant testified in that case that he knew that's how they were going to be used. Well, of course, the conduct is stopped. It's cut off by an intervening force. He's arrested, and so it didn't happen. But those are the sort of cases where this Court looks at the catch-all. The conduct is not completed, necessarily, but there is a clear, firm intent. The 9th Circuit case that the government cited in its response talked about the firm intent elucidated in all of these cases. Not the case here. Mr. Erikan, again, no factual basis, no admission whatsoever that he intended to cause damage, and there was no damage. It was agreed upon by the parties that there was no damage whatsoever. Multiple witnesses, the resident of the home, the owner of the home, the landlord testified there was no damage. The government could have put on evidence to say, you know, Judge, this stucco wall needs to be replaced, and it would cost more than $500, and this is a felony. But it didn't. And so this Court then cannot find that where clearly you have nothing more than misdemeanor liability, as is the case in Fennell, the individual being charged with a misdemeanor assault, that we're going to speculate about some amorphous activity that could have happened under other conditions, where there is not one modicum of evidence about Mr. Erikan's intent. The intent to do so would be tantamount to increasing the base offense level just because of the nature of the weapon. This is a Molotov cocktail case, and so in every case where one is launched, we're going to say that felony arson was attempted or was intended. That is not how this Court has proceeded. That's why we have enhancements. So your understanding is the District Court was talking more about willful arson as opposed to negligent arson. The District Court early on in the hearing disposed of the argument that this was a negligent arson because of the willful conduct and because of the peculiar aspects of New Mexico law that require it to occur in a certain location, and we briefed that. Your Honor, additionally, you know— But isn't his theory, the District Court's theory, really negligence? Which is to say, you throw one of these things, it could have burned something down. He does seem to be—the District Court seems to be preoccupied with the possibility, the potentiality of something happening that didn't happen. You said, why else would you throw a Molotov cocktail? And that is what the Court said. The problem with that is you're making a comment about the inherent nature of the weapon and not about the defendant's intent, which is what the law requires. That is the standard. You have to have some evidence, by a preponderance, that because the felony didn't occur, and that was stipulated. Well, I don't know if it was stipulated. The government did argue that there was an attempted felony. But because the felony did not occur, you have to have something to tie—you have to have a nexus to tie the defendant to this potential felony. And there just wasn't anything there. There was a lengthy hearing. The government could have put on this evidence and didn't. And so now this Court finds itself in the position of looking at a very serious enhancement, a four-level enhancement reserved for the most egregious conduct that you see in the context of an organizer-leader case, where you have somebody under 3B1.1. You have somebody who's managing five people in criminal conduct. Those are the kinds of cases where we apply four-level enhancements. This one is not. You just used a term that I kind of, in my own mind, have faulted the District Court for, which is potential felony. Doesn't that screw up the analysis? When you look at the guideline commentary, that word potential is there, but it's not potential felony. It's potential of facilitating another felony offense. In other words, you have to have something. You have to have a felony offense. Note 14, that's exactly what it says. For instance, if you're driving in a stolen car and you have a firearm, there is case law that says the firearm had the potential of facilitating your stolen automobile offense because you might defend your automobile. But there's an offense that you can put in your hand or see. And when you say potential felony, now we're getting more into the District Court's realm of, you never know, it might have caught fire to the bench, which led to the fire on the patio furniture, which led to the buildings burning down. So that's a potential felony. That's a wrong analysis to me. But you tell me. Your Honor, I agree. I don't mean to adopt this false grasp. I don't mean to adopt the District Court's reasoning there. The Court is right. Your Honor is right. The language from Note 14 requires the potential of facilitating another felony offense. And when you look at the way this Court has reasoned in the other cases, like Fennell, you have to actually have something concrete. Here we have a concrete offense, and it's a misdemeanor. There was no damage. You can't, by any twist of the tongue, change that to make the statement that he was going to commit a felony. It was a misdemeanor, and there was no evidence of the contrary. Unless the Court has further questions, I'll reserve the balance of my time. What would the standard be to determine whether there was a willful arson here, for guidelines purposes, just a preponderance? Yes. A preponderance finding that you would be found guilty beyond reasonable doubt, or just a preponderance finding, have to make a call in five seconds, was there or wasn't it? I think it's a preponderance finding that you'd be guilty beyond a reasonable doubt, but I don't have a cite for you, Your Honor. Thank you. May it please the Court. James Braun on behalf of the United States. I think it would be one standard, Your Honor, that a preponderance of the evidence that you committed the crime, not a preponderance of the evidence that, beyond a reasonable doubt, you committed the crime, the separate felony. Well, can you commit the crime other than beyond a reasonable doubt? If you've been charged with it and you're going to be convicted, then you would have to be beyond a reasonable doubt. But for sentencing purposes, I think the District Court would find, by a preponderance of the evidence, that the crime was committed. Very well. Thank you. If I could start at the beginning. Section 2K2.1B6B has two prongs. In his brief, the defendant has focused solely on the first prong of that enhancement, whereas the District Court's finding was clearly grounded in the second prong. And under that prong, the Court was not required to find that a separate felony was committed. Instead, that prong applies to— Can you read the language you're talking about on the first and second prong? Could you raise up your microphone a little bit? Yes, Your Honor. So the guideline reads that the four-level enhancement applies if the defendant used or possessed any firearm or ammunition in connection with another felony offense. Okay, so that's the prong. Oh, that's the first prong. The second prong is, or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense. That second prong is the one that was at play where the undercover agent obtained the pipe bombs from the defendant and had said what he was going to use it for. There wasn't an actual separate crime committed. It was going to be committed. And that's essentially what we have here. The District Court found that the defendant possessed—that his possession of the Molotov cocktail had the potential to result in felony arson. You have lost me. I follow you entirely on Eaton and reason to believe because the undercover agent is saying, here's what I'm going to do with this pipe bomb and blow this person up with this one and so forth. And so there was reason to believe. But here we have—we don't have an undercover agent. We have one guy with a lot of gasoline and rags and bottles. Why did he have reason to believe that it would be used or possessed in connection with another felony offense unless he threw it next to the house? Because that's what his intent was. So he's a bad throw. How many of these had he thrown, 10 to 12? I believe it was 10 to 15. And they were all in the backyard and none of them burned the structure. Right, but the testimony was that he was getting better and better as he was doing— He was getting better and better at making Molotov cocktails. Right. He's not going to burn his arm off next time, less likely. But I don't think the testimony is every throw was just six inches closer to the house. Why in 10 more throws he's going to be close enough to actually burn the house down. I think a reasonable interpretation of the better and better is that he was getting better and better at making effective Molotov cocktails. Just like a baker with a recipe makes it over and over again and perfects the recipe, that that's essentially what the defendant was doing here. He was perfecting his Molotov cocktail recipe so that it would be more effective. And more effective to terrorize, to disrupt, to intimidate. But if you want to burn a house down, you throw it next to the house, don't you? Not necessarily. Not next to a stucco house. Here there was a tree and the video showed that the Molotov cocktail hit the tree. If you catch that tree on fire, that would likely burn down the whole property. And that's what the victims testified that they believed his intent was. Both victims said that they believed he was going to burn the house down. And based on that testimony, it's not clearly erroneous for the court to find that that's what his intent was. That when he threw that, his intent was to cause a fire. Now, he had not been effective at it so far, but he kept trying. Well, obviously it's going to cause a fire. There's going to be at least a flash. The gasoline's going to burn. But to say cause a fire and then transport that over to burn the house down, that's a big jump. I don't think it's a big jump when you're talking about, first of all, what his intent was. Perhaps he hadn't been effective at it so far, but that's clearly what he was trying to do. It certainly wasn't clearly erroneous for the district court to find that's what he was trying to do. Based on that evidence of consistent and escalating conduct, he wasn't giving up. And as the witness testified, he was getting better. I don't think we can discount that testimony. He was having a great time over there and yelling at the neighbors and banging on their doors. What's better than you throw a Molotov cocktail in their backyard to really get them upset and scared? But as far as burning down a structure, you wouldn't throw it far from the house. You'd throw it near to the house. And the whole tree thing, that's you and me talking. That's not the district court, at least from the record that I read. The district court wasn't that specific about how it would happen, that it would catch the tree on fire. The tree would basically cause a bonfire that would catch to the house. But that's implicit in the court's finding that the only reason to throw this is to start a fire, meaning felony arson, not just any fire, not just a flash. Well, that's your argument point. A moment ago, you said the district court made a finding that was its intent. But isn't that the problem here is we don't have that finding. All we have is to try to start a fire. And you're trying to take a lot from that language in terms of what the findings were specific to the felony offenses. There's a potential to commit to trigger this enhancement. Am I misreading the record in the argument here to say that we have to extract from these few words, there's no other reason to throw a Molotov cocktail other than to try and start a fire. And that's it that we have to try to extract out the elements to a felony offense. And then the following line, so I find there was a potential to give rise to felony arson. And you're right, there was not a specific finding. I find his intent was to start a fire. It's implicit in that finding that why else would you, the only reason to throw that is to start a fire. And that shows implicitly, that shows the finding of his intent to start a fire when he threw it. Yeah, but starting a fire is only the first element of arson under New Mexico law. And so that's why I'm struggling with trying to figure out how can we look at an absence of findings to confirm that the district court here, or an absence of an articulation of findings, for us to review this to say, yes, the court said, well, it had the potential to commit arson, but doesn't do any analysis, particularly given these kind of odd facts of the multiple throwings, that we can conclude that the specific elements of arson were met, particularly when, as Judge Phil has pointed out, there was a lot of times these were being thrown over in the backyard, and there's just really no way to conclude the intent was to burn down the house or an occupied structure. But I think the two statements of the district court have to be read together, that there's no other reason to throw the Molotov cocktail other than to start a fire, and so it had the potential to give rise to felony arson. Wait, wait. I'm tracking along with the statute, and you were doing good, but it says, with the purpose of destroying or damaging a building, an occupied structure, so forth. So what needs to be shown is with the purpose of. Well, when you're dealing with potential crimes or would-be crimes under that second prong, the district court is not required to go element by element with the other crime. Under the second case of Dodge, which is cited in the government's brief, it says that the enhancement does not require knowledge of the specific offense that he committed. And even under Eaton, the court never looked at the homicide statute that he would have been committing, the undercover agent, or the blowing up the car statute that the undercover agent would have been committing. Those are obvious. Those are obvious. And what the court found here is it would have been felony arson. Well, I don't think that you can escape the words with the purpose of. I think if you want to have another felony that is either facilitated or has the potential to facilitate, you need another felony. And you can't say, well, I'll take this felony without this element. Here's the felony. And if you track through and you say, okay, we've got enough evidence to sustain the district court on each of these elements, I say, great, but I'm hung up on what the purpose of. That's where I need help. Wait. There needs to be a finding that the defendant intended to use the device in connection with another felony offense. It just has to be another felony offense. The defendant doesn't necessarily need to know the specific statutory site and the elements to it. I didn't say that. I didn't say the defendant has to know that. And I don't think under the case law the district court needs to find it either. Because as I said, under Eaton, the court never analyzed the specific elements of specific statutes. It was just felonious conduct. And here, the district court didn't just say generic arson. It said felony arson. So implicit in that is whether it's $500 or $2,500, it's felony arson. I meant to have a little diversion from Judge Federico, and instead I took over his line of questioning. So please continue, Judge Federico. Well, I just wanted to actually maybe refocus on a different part of the language, which is in the commentary, the 14th application note. How much potential is required? The commentary says, well, it has the potential to commit another felony offense. But how much potential? Well, they would make it easier. I believe that's the language the court used in Marufo in defining potential. But what really matters is what the defendant's intent was. And that the defendant intended to use it in connection with another felony offense. And that in doing so, it had the potential meaning that it would make it easier to commit that other felony offense. And that can apply in different circumstances. So if you have a bank robber who carries a gun during the bank robbery, that gun has the potential to facilitate the bank robbery, even if it's never used or pulled out. If things go south, it makes it easier to commit the crime. But it also applies to would-be crimes, to potential crimes. And that's where it comes down to what was the defendant's intent. Did the defendant intend to use the device in connection with the other potential offense? And potential meaning that it hasn't happened, that it's a would-be crime. And as far as you're going to judge Philip's comment about potential felony being the wrong analysis, that is the analysis, or at least the statement that the court used in the Martinez case, the 11th Circuit case from 2020 that the government cited in its brief, where the court said the clear language of the guideline in its commentary tells us that Section 2K2.1B6B applies to, quote, would-be and, quote, potential felonies. And so it maybe is using that language loosely. But I think the general idea is that it applies to felonies that haven't been committed yet, like we had here, where the defendant's intending to commit a felony when he possesses the destructive device. And if the police had executed a search warrant at the defendant's residence based on his prior conduct and found a Molotov cocktail, and the defendant admitted, yes, I was going to throw that over the fence, try and get the tree and try and light their house on fire, I think that the enhancement would clearly apply in that situation because he's possessing it with the intent that it would be used to facilitate that felony offense of starting the house on fire. Here, the defendant actually used the Molotov cocktail. And it doesn't make sense that the defendant would not be subject to the enhancement in a case where he actually chose his intent by using it, whereas if he simply possessed it without having used it, that it would apply. Well, I agree with you that the defendant's knowledge of the law doesn't matter. But let's assume the defendant was in law school and knew the difference between a misdemeanor and a felony arson and thought, I don't want to get a felony, and so just threw it where he threw it, thinking that's a misdemeanor, aha, they won't get four levels on me. You wouldn't say then that that's a felony, would you? No, and that would be, going back to the hypothetical, if the defendant is found with a Molotov cocktail and says, yes, I'm just messing around with them. I had this, I was going to throw it over onto a rock wall where I knew it wouldn't cause any damage just to scare them or mess with them. Well, isn't that the evidence in this case? You don't have, as opposing counsel said, a statement from him saying, oh, I just wanted to get it in the window or I'm going to burn that house down yet or something like that. What you have is hard facts, which is he's logged 10 to 12, 13 of these into the backyard, and you have a burn on a fence that's far from the house that's near a tree, apparently. How burnable that is, I don't know. We can't determine something like that. But based on what we know and lacking some sort of a comment or a statement from the defendant, how is that enough? Well, when dealing with intent, we're often lacking a statement. Courts often have to look at circumstantial evidence or juries to determine intent. And that's what I'm doing when I say 13 of them logged and none of them near the house. Right, and that's what the district court did here. And this court provides or gives substantial deference to the district court's application of the facts to the guidelines, and this ultimate question of what was his intent is a factual finding that's reviewed for clear error. And it's not clearly erroneous on these facts to conclude that the defendant intended to commit a felony because even though he's throwing 10 to 13 or 10 to 15 without success, he keeps doing it, and there's testimony that he keeps getting better. So he's trying. I see I'm out of time. Please, please. He's trying to get better. He's trying to perfect his recipe, so to speak.  The district court was right to take that testimony and find that implicitly, again, not as an explicit finding of intent, but implicitly that when he threw that, the intent would have been to start a fire, to commit felony arson. Very well. Thank you. Your Honors, the government admits that the district court was not specific in its findings. There were none with regard to Sir Eragon's intent, and this court cannot defer to those findings with respect to this enhancement. That is essentially the problem. It was treated like a strict liability enhancement. Under this logic, you will see cases, you could see cases, with courts saying the defendant possessed a gun and shot it. There's no reason to do that other than to kill somebody. The defendant had a bomb and could have thrown it. No reason to do that other than to explode a car. To Judge Federico's question, the Fennell case provides the holding that the court must have evidence with an addition of reliability to show that there was felonious intent. In a case where you're talking about potentialities and there was an intervening cause, there has to have been felonious intent, intent to commit a felony, and reliable evidence of that for the court to consider in making such a finding. And so, I ask the court to vacate and remand the case. Thank you, Your Honors. Thank you, counsel, for your arguments. The case is submitted. Counsel are excused, and the court stands in recess until further call.